UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOI J. LAWRENCE, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, <br><br> **Defendant.** | Civil Action No. 20-1616 (JEB) |

## MEMORANDUM OPINION

On March 10, 2018, James C. Cohen, Jr. fell in his home and suffered serious injuries; he died roughly sixteen months later. His daughters, Toi J. Lawrence and Nakiya J. Cohen, brought this suit against National Union Fire Insurance Co. of Pittsburgh, PA, to recover benefits under their father's accident insurance policy. This Court previously denied without prejudice Defendant's initial bid for dismissal of the Complaint or for summary judgment, finding some inadequacies in the briefing on both sides. National Union now returns with a renewed Motion, once again contending that both the language of Cohen's policy and his medical history prevent any recovery. Agreeing that Plaintiffs have not adequately pled that Cohen suffered "complete and irreversible paralysis," as required under the insurance policy, the Court will grant Defendant's Motion to Dismiss. As Plaintiffs may be able to cure their pleading deficiency, however, the Court will dismiss only the Complaint and not jettison the full case, thereby permitting them to file an Amended Complaint should they so desire.

1

**I.        Background**

As the Court's disposition turns on Defendant's Motion to Dismiss, it draws the relevant facts from the Complaint and recites them in the light most favorable to Plaintiffs. <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  The Court similarly relies on Cohen's Blanket Accident Insurance Policy. <u>See</u> ECF No. 11-3 (Def. Exhs.), Exh. A (Policy). Because Plaintiffs essentially incorporate that Policy into their Complaint, <u>see</u> ECF No. 1 (Compl.), ¶¶ 13–16, 19–20, 23–25, the Court may consider it without converting the Motion to Dismiss into a Motion for Summary Judgment. <u>See</u> <u>Ward v. D.C. Dep't of Youth Rehab. Servs.</u>, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (explaining that on motion to dismiss, court may consider documents "incorporated by reference in the complaint" or "upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss") (internal quotation marks and citations omitted).

On or before February 19, 2006, James C. Cohen, Jr. purchased an accident insurance policy from National Union. <u>See</u> Compl., ¶ 13.  Under the terms of the Policy, an insured individual is eligible for a payable benefit if he is rendered "permanently totally disabled" within 90 days of an accident causing a qualifying injury, and if such disability continues for a requisite period of time. <u>See</u> Policy at 3–4 (capitalization altered).  An individual becomes "permanently totally disabled" if he: 1) suffers any of several stipulated injuries including, as relevant here, "[p]araplegia"; 2) is unable to engage in the usual activities that a person of like age, sex, and health could immediately prior to the accident; and 3) requires the supervision of a physician. <u>Id.</u> at 5.  The Policy goes on to define "[p]araplegia" as "the complete and irreversible paralysis of both lower Limbs." <u>Id.</u>

The Policy further clarifies that the relevant "bodily injury" must be "sustained as a direct result of an unintended, unanticipated accident that is external to the body" during the period of coverage, and it must "directly (independent of sickness, disease, mental incapacity, bodily infirmity, or any other cause) cause[] a covered loss." Id. at 4. In addition, the Policy contains various exclusions, including the following:

> "No coverage shall be provided under the Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks":
>
> "(2) sickness, or disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these"; and
>
> "(10) the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly[] or indirectly from the treatment."

Id. at 6.

On March 10, 2018, the then-69-year-old Cohen suffered an "accidental fall" in his home, which "shattered his right hip and injured his right arm." Compl., ¶¶ 17–18. As a result, he "lost all use of both legs and his right arm and hand," leaving him "wheelchair bound." Id., ¶¶ 18, 21. After being home for some time, he was admitted to the hospital once again around July 23, 2019, and died four days later. Id., ¶ 22.

Prior to his passing, Cohen timely filed a claim with National Union, which the insurer subsequently denied. Id., ¶¶ 20, 25. Dissatisfied with that disposition, Toi Lawrence and Nakiya Cohen — the beneficiaries under Cohen's Policy — brought suit in this Court against National Union on June 19, 2020. Id., ¶¶ 4, 24. They asserted a single count of breach of contract, claiming benefits in arrears under the Policy, interest thereon, and consequential damages. Id., ¶¶ 11–25, p. 6. According to Plaintiffs, the Policy entitled Cohen to a $1 million payment in the

event he suffered "complete and irreversible paralysis of both lower limbs . . . as the result of an accidental injury" that spanned a full year. Id., ¶¶ 15–16.

National Union moved to dismiss or for summary judgment. See ECF No. 5. On September 15, 2020, this Court denied that motion without prejudice, determining that "the briefing on both sides leaves something to be desired." ECF No. 10 (Order) at 1. Specifically, while Defendant consistently blurred the distinction between its two alternative forms of desired relief, Plaintiffs misstated the federal rules for summary-judgment motions, demanded discovery without following proper procedures, and failed to submit the obligatory separate statement of disputed material facts. Id. at 2.

Hoping for a cleaner record, the Court invited Defendant to file a renewed motion. Id. at 3. Taking up that offer, National Union now moves once again to dismiss or for summary judgment.

## II.    Legal Standard

Because the Court dismisses Plaintiffs' Complaint, it need only recite that standard. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).

Although "'detailed factual allegations'" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).  A court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III.     Analysis

The Court first considers Defendant's Motion to Dismiss and concludes that Plaintiffs have not pled sufficient facts for the Court to reasonably infer that Cohen was entitled to benefits under the Policy.  Although that disposition resolves the pending Motion, the Court then briefly addresses several issues that may remain relevant in the event this litigation persists.

#### A.  Failure to State a Claim

As previously recounted, Cohen must have suffered "[p]araplegia" — namely, "the complete and irreversible paralysis of both lower Limbs" — to obtain a payout under his accident insurance policy.  See Policy at 5; see also Compl., ¶ 15; ECF No. 13 (Pl. Opp.) at 8–9. Plaintiffs, however, have not surmounted the pleading hurdle on their sole breach-of-contract claim, for their barebones Complaint does not allege that he experienced "complete and irreversible paralysis."

To start, the Complaint neither states nor implies that Cohen's injury was "irreversible." In the few words Plaintiffs devote to the critical accident and its aftermath, they allege that his March 2018 fall "shattered his right hip and injured his right arm," after which he "lost all use of both legs and his right arm and hand despite the best efforts of physicians to treat him for his injuries," leaving him "wheelchair bound."  Compl., ¶¶ 18, 21.  Nowhere, however, do Plaintiffs

5

indicate that Cohen's "los[s] [of] all use" of his legs, id., was incapable of being reversed. Asserting without elaboration that physicians could not immediately treat Cohen and that he was confined to a wheelchair is a far cry from pleading that his injury was "of such severity that recovery is impossible." Webster's Third New International Dictionary Unabridged 1196 (2002) (defining "irreversible"); see also Black's Law Dictionary (11th ed. 2019) (defining "irreversible" as "persistent and incurable"). Indeed, the Complaint says nothing whatsoever about the anticipated duration of Cohen's injury or prospects for future recovery. If there remained a possibility that he might regain function in his legs at a later time, of course, his injury would not be "irreversible." As a result, Plaintiffs have not sufficiently alleged that Cohen qualified for benefits under the Policy.

    Although this defect provides an independent ground for dismissing the Complaint, the Court is similarly dubious that Plaintiffs have adequately pled that Cohen suffered "paralysis" of his lower limbs. As noted, all Plaintiffs have to say on the subject is that he "lost all use of both legs." Compl., ¶ 18. Simply alleging loss of use, however, does not satisfy established definitions of "paralysis," a component of which involves the precise physiological mechanism by which movement is impaired. See Black's Medical Dictionary 466 (40th ed. 2004) (defining "paralysis" as "loss of muscular power due to some disorder of the nervous system"); Dorland's Illustrated Medical Dictionary 1227 (28th ed. 1994) (defining "paralysis" as "loss or impairment of motor function in a part due to lesion of the neural or muscular mechanism"); see also Rasenack ex rel. Tribolet v. AIG Life Ins. Co., 585 F.3d 1311, 1319 (10th Cir. 2009) (considering medical definitions of "paralysis" when interpreting insurance policy). While a spinal injury damaging neural pathways could satisfy these definitions, an array of broken lower-body bones precluding all use of one's legs might not — at least without more. Here, the

6

Complaint never even gestures at any neural or muscular consequences of Cohen's fall. Without greater specificity, the Court can only speculate as to the precise nature of his injury.

In any event, even if the Court assumed that a reasonable policyholder would consider that paralysis existed based exclusively on physical symptoms — as opposed to requiring an impairment of particular neural or muscular mechanisms — the Complaint might still come up short. Although Plaintiffs allege that Cohen lost "use" of his legs as a result of the fall, they never assert that he lost the "power of voluntary movement in a muscle," Stedman's Medical Dictionary 1311 (27th ed. 2000), or otherwise was deprived of "muscle function or sensation." Rasenack, 585 F.3d at 1320. That is, while Plaintiffs insist Cohen could not "use" his legs as a general matter, they do not suggest he lacked the powers of motion or sensation. Loss of use is plainly necessary to a finding of paraplegia, but it may not alone be sufficient.

To be sure, it is certainly possible that Cohen did suffer paralysis of his legs, as required by the Policy. Plaintiffs seem to believe as much, contending in their Opposition that "medical evidence of record" establishes that the March 2018 fall left him paralyzed. See Pl. Opp. at 6–7, 9–10. The question at this stage, however, is whether their Complaint sufficiently alleges a cause of action. Plaintiffs there must plead facts that "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Because they have not done so with respect to a necessary element of their breach-of-contract claim — namely, that Cohen was completely and irreversibly paralyzed, and therefore entitled to benefits under the Policy — the Court will grant Defendant's Motion to Dismiss the Complaint. See Okusami v. Psychiatric Inst. of Wash., Inc., 959 F.2d 1062, 1065 (D.C. Cir. 1992) (granting Rule 12(b)(6) motion when complaint lacked element "essential" to claim). The Court, however, will permit Plaintiffs to file an Amended Complaint

7

if they can retool their allegations to avoid this pitfall.  See Ciralsky v. CIA, 355 F.3d 661, 666–67 (D.C. Cir. 2004) (distinguishing between dismissing complaint and case).

B.  Additional Issues

Although dismissal of the Complaint moots Defendant's alternative summary-judgment bid, the Court finds it appropriate to briefly address — without resolving — a few issues relating to that latter effort, given that an Amended Complaint may prompt Defendant to renew its Motion in short order.

National Union contends that it is entitled to summary judgment because Cohen's injuries were not the result of an accident independent of bodily infirmity, but rather were caused by a degenerative disease that had affected his legs and ambulation for several years prior to his March 2018 fall.  See ECF No. 11-1 (Def. Mot.) at 3, 18–21.  Although its briefing remains somewhat murky, Defendant points to evidence that Cohen suffered a spinal-cord injury in 2012, the symptoms of which worsened in the ensuing years and resulted in more frequent falls at home, as well as an attending physician's 2018 findings of advanced degenerative changes to his left hip and lower spine.  Id. at 15–17.  That history, National Union maintains, makes clear that Cohen's 2018 fall and related disability "do not arise from an accident," but rather "are the consequence[s] of 'bodily infirmity.'"  Id. at 20.  As a reminder, the Policy does not cover "any loss resulting in whole or in part from, or contributed to by . . . sickness," "disease," or "bodily infirmity."  Policy at 6.

In mounting its argument, however, Defendant at times seems to conflate two distinct causal questions: whether Cohen's preexisting infirmity caused his fall, and whether his preexisting infirmity caused his ultimate injury.  That is, National Union appears to suggest that an affirmative answer to the former necessarily resolves the latter in like manner because by

8

causing him to fall, Cohen's prior condition thereby "result[ed] in" or "contributed to" the ensuing injury, accordingly rendering him ineligible for benefits. Id.  For instance, Defendant cites a neurologist's statement that Cohen's March 2018 fall was "due to difficulty with ambulation directly related to his high spinal cord injury," Def. Exhs., Exh. F (Letter of Dr. Mitchell Wallin) at 1, for the proposition that his injuries "were due to a pre-existing[] susceptibility." Def. Mot. at 21.

On initial review, this causal reasoning may face an uphill battle.  Courts interpreting insurance policies containing terms similar to National Union's "have long rejected attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness." Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 831 (10th Cir. 2008).  These decisions consider causes of the accident and consequent injury separately, affirming denials of coverage "only when the disease or pre-existing condition was a cause of the death or injury, not when it was simply the cause of the accident that led to a death or injury." Ferguson v. United of Omaha Life Ins. Co., 3 F. Supp. 3d 474, 483 (D. Md. 2014); see also, e.g., Pavicich v. Aetna Life Ins. Co., No. 09-818, 2010 WL 3854733, at *10 (D. Colo. Sept. 27, 2010).  In Kellogg, for instance, while a seizure "may have been the cause of the [car] crash" that in turn killed the plaintiff by blunt trauma, the court determined that the seizure "was not the cause of [his] death" such that coverage would be precluded. See 549 F.3d at 832.  Much like the present case, the insurance policy at issue did "not contain an exclusion for losses due to accidents that were caused by physical illness, but rather exclude[d] only losses caused by physical illness." Id.; see also id. at 821, 832–33 (noting that policy's exclusion of losses "contributed to by" preexisting illness did not change analysis).  The Court need not elaborate further at this juncture, or even hold that the reasoning of these cases necessarily controls here.  It suffices to note that, even assuming Cohen

9

would not have fallen but for his preexisting infirmity, National Union may find it difficult to justify its coverage denial on the ground that the infirmity caused or "contributed to" his injury simply by virtue of its causing his fall.  See Policy at 6.

Defendant, however, also seems to gesture at the related argument, which may bear more fruit.  Interpreted generously, it contends that Cohen's injury did not cause his asserted loss "independent of sickness, disease, . . . [or] bodily infirmity," id. at 4, because his "pre-existing condition substantially contributed" to his ultimate disability by rendering its severe extent inevitable.  See Def. Mot. at 20.  In other words, Cohen's loss was not independent of his preexisting bodily infirmity because such infirmity exacerbated the loss he ultimately suffered.  Plaintiff Lawrence, for instance, acknowledged that "[c]ombined with other degeneration in Mr. Cohen's hip, knee, and spine," his "new injury render[ed] [him] completely unable to" use his legs.  See Def. Exhs., Exh. E (Letter of Toi Lawrence) at 1 (emphasis added); see also Def. Mot. at 16.

This tack finds more favorable breezes.  Under the plain terms of the Policy's general exclusions, Cohen's prior condition would seemingly "contribute[] to" his loss if it worsened the injury caused by the fall.  See Policy at 6.  Caselaw points in the same direction.  See Westbrook v. Safeco Life Ins. Co., 908 F.2d 927, 929 (11th Cir. 1990) ("[W]here a diseased condition aggravates the result of the injury or is, itself, aggravated thereby, there can be no recovery, where the combined result is to cause the . . . disability.") (citation and emphasis omitted); Castilla v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 11-62086, 2012 WL 2428496, at *1–3, 8 (S.D. Fla. June 27, 2012) (deeming plaintiff's alleged blindness not "independent" of prior infirmity because his "prior medical history . . . contributed to his current vision problems"); McComb v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 19-553, 2020 WL 3799164, at *2–3

(W.D. Wisc. July 7, 2020); Owusu-Sampah v. CUNA Mut. Ins. Soc'y, No. 09-2344, 2011 WL 2149916, at *5–6 (N.D. Tex. May 31, 2011). Yet a word of warning is nonetheless warranted: if National Union elects to renew this argument in the event Plaintiffs file an amended pleading, it may well require expert testimony clarifying the precise interaction between Cohen's prior infirmity and his injury suffered as a result of the fall. See Williams v. Patterson, 681 A.2d 1147, 1150 (D.C. 1996) ("[I]n cases presenting medically complicated questions due to multiple and/or preexisting causes, . . . we have held that expert testimony is required on the issue of causation.") (alteration in original) (citation omitted).

For their own part, Plaintiffs' second effort at an opposition suffers from shortcomings similar to their first. Continuing to believe that discovery is necessary, Plaintiffs this time submitted a declaration so stating under Federal Rule of Civil Procedure 56(d), after previously shirking that obligation. See ECF No. 13-2 (Pl. 56(d) Decl.). Their filing, however, never explains why they need discovery; it offers only the wholly conclusory assertion that a present ruling on Defendant's Motion would leave Plaintiffs "prejudicially bereft of gathering incisive evidence." Id. at 1. This is plainly insufficient under the Rules, which require Plaintiffs to: 1) "'outline the particular facts [they] intend[] to discover and describe why those facts are necessary to the litigation'"; 2) "explain why [they] could not produce those facts in opposition to the pending summary-judgment motion"; and 3) "'show [that] the information is in fact discoverable.'" Jeffries v. Barr, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting Convertino v. U.S. Dep't of Justice, 684 F.3d 93, 99–100 (D.C. Cir. 2012)). Plaintiffs' declaration "must state 'with sufficient particularity . . . why discovery [is] necessary'"; its "conclusory demand for discovery" will not suffice. Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care

Providers, LLC, 312 F.R.D. 678, 684–85 (D.D.C. 2015) (alteration in original) (quoting Ikossi v. Dep't of Navy, 516 F.3d 1037, 1045 (D.C. Cir. 2008)).

In addition, Plaintiffs have once again failed to comply with Local Rule 7(h), which requires them to set out all genuinely disputed material facts with "references to the parts of the record relied on to support the statement." Their initial submission — puzzlingly captioned "Defendant's Statement of Undisputed Material Facts" — is entirely devoid of citations and instead simply regurgitates the text of their Complaint. See ECF No. 13-1 (capitalization altered). Although their supplemental statement filed after Defendant's Reply contains a handful of record citations, see ECF No. 17 at 2–4, Plaintiffs would do well to fully heed their procedural obligations in the event this case winds its way back to the present posture.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss the Complaint and deny its Motion for Summary Judgment as moot. If Plaintiffs seek to file an Amended Complaint, they shall do so by December 7, 2020. A separate Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 23, 2020